UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Cardenas,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:24-cv-00694-KES-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 12, 16)** |

### I.　Introduction

Plaintiff Timothy Cardenas appeals a final decision of the Commissioner of Social Security denying supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

### II.　Factual and Procedural Background

As a disabled child Plaintiff was awarded SSI. AR 21. At age 18 the agency redetermined his SSI eligibility on April 18, 2018 pursuant to the regulations applicable to adults, and concluded he was no longer disabled as of April 1, 2018. AR 21, 88. The Commissioner upheld the determination on reconsideration. AR 89. On May 8, 2023, the ALJ conducted an administrative hearing. AR 41–56. The ALJ issued an unfavorable decision on July 6, 2023, finding Plaintiff not disabled. AR 21–29. The Appeals Council denied review on December 6, 2023. AR 5–10. Plaintiff filed this action on June 13, 2024.

### III.　The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 7, 10.

1

by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work

2

experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

The typical step one determination regarding substantial gainful activity is not in issue. At step two, the ALJ identified severe impairments of autism spectrum disorder and ADHD. AR 23. At step three the ALJ found that no impairments or combination thereof met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded as follows:

> the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He must be limited to simple, routine, and repetitive tasks. Work must entail no more than occasional interaction with supervisors and coworkers and no interaction with the public. AR 25–27.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 28. At step five, in reliance on the Vocational Expert's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: cleaner, routing clerk, and price marker. AR 28. The ALJ therefore concluded that Plaintiff was not disabled at any time since the April 1, 2018, effective date of the unfavorable disability redetermination. AR 29.

### V. Issues Presented

Plaintiff asserts three claims of error: **1-** The ALJ failed to provide clear and convincing reasons for discounting the Plaintiff's subjective symptoms, **2-** The ALJ's RFC assessment fails to consider and address all medical source opinions in the record, and **3-** The ALJ failed to properly consider the lay witness testimony.

#### A. Subjective Symptoms; RFC Generally

##### 1. Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The

3

RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Analysis**

The ALJ summarized Plaintiff's symptom testimony as follows, the accuracy and completeness of which is not disputed:

> The claimant alleged that he was disabled due to ADHD and autism (Exhibit 2A-2). He reported difficulty interacting with others and racing thoughts. He had to wear headphones in public. He took medications in attempts to control his thoughts and feelings. He required reminders for hygiene and being unable to manage his own finances. He experienced panic attacks and did not have a drivers' license doe to fear of driving. He had difficulty tolerating stress or changes in routine. He has had trouble passing his college courses and was advised to take time off due to low grades. The claimant's impairments allegedly affected his talking, completing tasks, concentration, understanding, following instructions, and getting along with others. He estimated that he could only pay attention for less than ten minutes at a time (Hearing Testimony, Exhibit 13E). AR 26.

The ALJ's analysis of the testimony is short enough to quote in full:

> The claimant's diagnoses include ADHD and autism spectrum disorder (Exhibit 7F-1). Associated symptoms included mood swings, difficulty with interpersonal interactions, irritability, impaired communication, concentration deficits, sleep disturbance, and hyperactivity (Exhibit 2F-3, 3F-3, 7F-2, 8F-4, 5, 15F-3). He received ongoing treatment that included medication management and psychotherapy (Exhibit 7F-1, 8F-8, 19F-6).
>
> The claimant's impairments improved with treatment, with a good response to medication (Exhibit 8F-7, 9F-3, 13F-1). He had improved relations with others and was better to focus better or concentrate well (Exhibit 8F-3, 18F-3, 19F-5, 20F-7). The claimant has recently had to take time off from college due to poor grades, but he has also got A's and B's while in college (Hearing Testimony, Exhibit 19F-5).
>
> The claimant participated in a consultative psychological examination in October 2019. He was administered the WMS-IV and received scores ranging from 72 to 109 (Exhibit 14F-8). He was administered the WAIS-IV and received a Full Scale IQ score of 80 (Exhibit 14F-9). The examiner found that the claimant did not meet the criteria for bipolar disorder, ADHD, or Asperger's disorder (Exhibit 14F-10). AR 26–27.

#### a. **Clinical Exams and Progress Notes**

With respect to improvement with treatment and a good response to medication, the parties dispute whether the ALJ's analysis is an accurate and complete description of the cited records. For the following reasons it does not appear that the description of the cited records are entirely

5

accurate and complete.

First, the ALJ cited Exhibit 8F-7 (AR 1077)[2], a June 20, 2017, psychiatric progress note from Plaintiff's psychiatrist, Dr. Zhang. Although the history of present illness (HPI) does mention "good response to medication," it reflects that Plaintiff's symptoms had "<u>slightly</u> improved." Id. (emphasis added). The ALJ omitted that qualifier. The "review of Systems" also noted ongoing difficulties with concentration, organization, memory, hyperactivity, impulsivity, fidgeting, social interaction problems, inability to understand non-verbal gestures, poor eye contact, problems maintaining relationships with peers. Id.

As to the objective mental status examination (MSE), despite various normal findings regarding appearance, affect, orientation, thought process, and others, the MSE also reflected anxious mood and impaired concentration.[3] These findings are consistent with the "review of systems" and Plaintiff's hearing testimony that he had anxiety and impaired concentration

The ALJ also cited Exhibit 13F-1 (AR 1133), a letter from Dr. Zhang which does note that Plaintiff has had "good response to medication" (Methylin SR 20, Risperdal 2mg). Dr. Zhang did not expand on that statement, such as identifying what symptoms, clinical findings, or objective signs were present before and after the medication regimen that could support a conclusion that his medication response was "good." The statement is vague and unhelpful in determining Plaintiff's functional limitations. For instance, it would be equally true had Dr. Zhang stated nothing more than the mediation response has been "poor".

Next, the ALJ cites Exhibit 8F-3 (1073), a December 27, 2018, progress note which again noted "slight" improvement, though the ALJ did not acknowledge that qualifier. However, the

---

[2] The ALJ also cited Exhibit 9F-3 (AR 1097), which contained largely the same findings.
[3] Later in his brief, Plaintiff notes the mental status examinations consistently documented that the Plaintiff had impaired concentration. MSJ at 14 (citing AR 1074, 1077, 1079, 1150- 51, 1166, 1181, 1183, 1186, 1200, 1202, 1211, 1258, 1381, 1392).

6

progress notes did mention that Plaintiff had improved relations with others and had improved concentration. Id. On the other hand, much like the progress notes discussed above, Dr. Zhang also noted "he felt anxious in social setting and was easily anxious now." Id. The remaining progress notes largely reflected the same findings. See AR 18F-3, 19F-5, 20F-7.

Thus, the ALJ's discussion of this objective evidence lacks in persuasiveness. Further, although objective findings are relevant, they are not a standalone basis to reject a claimant's testimony. Rollins, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

### b. Academic Performance

The ALJ stated that "the claimant has recently had to take time off from college due to poor grades, but he has also got A's and B's while in college (Hearing Testimony, Exhibit 19F-5)."

In fact, he received zero A's, two B's, one C, one D, and four F's for a cumulative GPA of 1.55 over the course of the 3 semesters starting in the Fall 2020. AR 692–94.

The hearing testimony discusses the poor grades and the time off, not the alleged A's and B's. AR 46–47. The ALJ then cites Exhibit 19F-5 (AR 1180), a September 1, 2020, progress note from Dr. Zhang stating that "he got A and B grades in community college." AR 1180–81. Yet at the time of this statement by Dr. Zhang, Plaintiff had just begun his first semester at Clovis Community College (CCM) (Fall 2020), a semester in which he received F's in all three his classes. Id. Importantly, Defendant emphasizes Plaintiff receiving A's and B's in reliance on Dr. Zhang's same treatment note discussed above dated September 1, 2020 (AR 1180–81). Defendant then explains that Plaintiff receiving "high marks in 2020" and "the ability to maintain a high grade point average in college classes" undermines testimony as to work-preclusive limitations. Resp. at 8 (emphasis added) (citing Freeman v. Berryhill, 724 F. App'x 624, 625 (9th Cir. 2018). Resp. at 8.

Defendants reliance on Plaintiff receiving "high marks" and maintaining "a high grade point

7

average" is actually undermined by the fact that Plaintiff's cumulative GPA was 1.55.

Defendant explains that Plaintiff graduated from high school in 2017, and that an additional treatment note from July 2018 states that he was "in community college now." Id. (citing AR 1097). Defendant contends that the evidence Plaintiff cites does not contradict his report that he "got 'A' and 'B' grades in community college" from 2018 to September 2020 (AR 1181).

This argument is challenged in that CCM only produced transcripts from the Fall of 2020 to the Spring of 2022, and as Plaintiff explains:

> While the Plaintiff started the process for attending community college, he did not actually begin to attend any actual classes until 2020 consistent with his transcripts. (AR 911). The entry on his Student History Report from May 27, 2020 noted the student was confused and "hasn't taken classes here." (Id.). He was not assisted with registration until July 2020. (Id.).

Reply at 4, ECF No. 17.

Additionally, as discussed above, the ALJ cited exhibit 18F-4 (AR 1166), Dr. Zhang's May 13, 2020 treatment note because it stated, "His medications worked well for him and he concentrated well." AR 1166. Yet the immediately preceding sentence states, "He tried to go to community college now and still lives at his mother's house. He could not go to college due to financial reason." Id. In sum, it appears Plaintiff did not start community college until September 2020.

Defendant further contends that "Plaintiff's transcript only shows that he failed one semester and then withdrew the next semester (AR 896). His grades improved after he returned from his semester off (AR 896-97)." Resp. at 8. Plaintiff's grades did in fact improve after receiving three F's in Fall 2020. He received two B's, one C, one D, and one F. AR 908. Importantly though, Plaintiff's cumulative GPA was a 1.55, despite the accommodations CCM provided for his mental impairments, including: priority registration, a note taker, test proctor outside of classroom, testing in a room with reduced distraction, extended testing time, e-text, audio

recorder, and personal, academic, and vocational counseling. AR 906.

In sum, the ALJ relied on one treatment note from September 2020 stating that Plaintiff got A's and B's (19F-5 (AR 1180)). This was a selective and somewhat misleading characterization of Plaintiff's academic record because: **1-** Plaintiff in fact got all F's for the semester during which that progress note was dated (Fall 2020); and **2-** Plaintiff's official transcript reflects a cumulative GPA of 1.55 for the duration of his enrollment at CCM, which the ALJ appears to have overlooked.

As for the Psychological examination in October 2019 with Dr. Murphy and the associated WMS-IV test scores, those will be addressed below in the discussion of the opinion evidence.

### B. Medical Opinions

#### 1. Applicable Law

For disability applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id*

#### 2. Analysis

##### a. Dr. Murphy

On October 2, 2019, Plaintiff attended a consultative psychiatric examination arranged by the agency with Dr. Murphy. AR 1136–45. Dr. Murphy conducted an interview, mental status examination, completed a questionnaire, a narrative opinion, and administered WMS-IV and WAIS-IV memory and intelligence testing.

>The ALJ explained as follows with respect to the cognitive testing:
>
>The claimant participated in a consultative psychological examination in October 2019. He was administered the WMS-IV and received scores ranging from 72 to 109 (Exhibit 14F-8). He was administered the WAIS-IV and received a Full Scale IQ score of 80 (Exhibit 14F-9). The examiner found that the claimant did not meet the criteria for bipolar disorder, ADHD, or Asperger's disorder (Exhibit 14F-10). AR 27.

The ALJ then explained as follows with respect to Dr. Murphy's opinion:

>The opinion of consultative psychological examiner, James P. Murphy, Ph.D., from October 2, 2019, that the claimant would have no difficulty performing simple repetitive or complex tasks is partially persuasive. While the undersigned has further limited the claimant, a finding that he is not precluded from all work activity is supported by Dr. Murphy's own examination where the claimant had an adequate fund of knowledge, intact memory, and clear, coherent, well organized, and relevant thoughts (Exhibit 14F). This is also consistent with the other evidence of record where the claimant was assessed with attention within normal limits, intact memory, a normal fund of knowledge, and a logical thought process (Exhibit 9F-4, 15F-7, 18F-4, 19F-5, 20F-5, 21F-6). AR 27.

Although the ALJ did address the factors of supportability and consistency—as the regulations require when evaluating any medical opinion—the ALJ's discussion of the opinion and testing was oversimplified and disregarded several reasons why Dr. Murphy's opinion is unpersuasive.

First, Dr. Murphy did not solely opine that Plaintiff would have no difficulty performing simple, repetitive or complex tasks. His opinion was much more broad sweeping. He completed a questionnaire entitled "Medical Statement of Ability To Do Work-Related Activities (Mental)." AR 1136–38. The questionnaire addressed 10 different mental work activities related to understanding, memory, judgment, adaptation, and social interaction, among others. Id. The questionnaire then instructs the clinician to rate the severity of the claimant's limitation in each area on a 5-item scale: none, mild, moderate, marked, or extreme. Id. Dr. Murphy opined that Plaintiff had no limitations with respect to any mental work activity. However, this is not supported by, or consistent with, Plaintiff's scores on cognitive testing.

Relevantly, the ALJ only recited the raw scores as quoted above, not the corresponding percentiles listed immediately beside the raw scores. For example, the 5 areas comprising the WMS-IV included: Auditory Memory (AMI), Visual Memory (VMI), Visual Working Memory Index (VWMI), Immediate Memory Index (IMI), and Delayed Memory Index. AR 1142. The corresponding scores were: 72, 82, 109, 72, 80. Id. The corresponding percentiles were: 4, 12, 73, 3, and 9. Dr. Murphy explained that scores of 70 or less[4] "are associated with the most impaired clinical groups, mild to moderate intellectual disability (i.e. cognitive functioning and daily living impairment)." Id. (direct quotation). He further explained that borderline to low average scores of 70-85 "are associated with autistic disorder, among other conditions." Id. Plaintiff's full scale IQ was 80, though no corresponding percentile was noted. AR 1142–43

These scores and their respective percentiles seem to undermine Dr. Murphy's questionnaire responses that Plaintiff did not have a limitation of any severity, mild or otherwise, in any area of work-related mental functioning.

The ALJ found that the opinion was "supported by Dr. Murphy's own examination where the claimant had an adequate fund of knowledge, intact memory, and clear, coherent, well organized, and relevant thoughts." In addition to these mental status examination findings, Dr. Murphy also noted Plaintiff was orientated to person, place, and time, knew today's date and his SSN., but did not know the current president, former president, or capital of California.

However, the findings of intact immediate and remote memory are again somewhat undermined by the immediate and delayed memory scores in the 3rd and 9th percentile on the WMS-IV. Further, mental status examination findings in general—which often include things like

---

[4] It is not clear if the narrative explanation only applied to VWMI. There would seemingly be no reason to only contextualize the VMWI and not the other four indexes listed in the same chart. Further, it seems unlikely that the explanation only applied to VMWI given the index score and percentiles were consistent between each subcategory. For example, Plaintiff's AMI score of 72 corresponded to the 4th percentile, and IMI score of 72 corresponded to the 3rd percentile. Id. Plaintiff's VMI score of 82 corresponded to the 12th percentile, and DMI score of 80 corresponded to the 9th percentile. Id.

11

grooming, appearance, mood—are somewhat surface level and subjective as compared to the in depth objective and quantifiable results of cognitive testing.

Finally, Dr. Murphy's conclusion that Plaintiff did not meet the criteria for ADHD is inconsistent with well documented and undisputed clinical evidence reflecting his diagnoses and treatment for the same with Ritalin.

In sum, Dr. Murphy's opinion that Plaintiff—an autistic individual with cognitive testing scores in the single digits (percentile wise), and a 1.55 cumulative GPA in community college—had <u>zero</u> limitations of any severity, mild or otherwise, in any area of mental work activities, is at odds with the cognitive testing he administered.

### b.   **Dr. Engeln**

Plaintiff contends the ALJ erred in failing to consider or discuss the opinion of Dr. Engeln:

> Dr. Engeln observed that Mr. Cardenas presented to his office with earphones in place; he did not converse with his mother; sat quietly, smileless, with hands in his pocket listening to his earphones; his legs jiggled throughout the interview; and he emphasized social and achievement anxiety. (AR 1054). On the WISC-IV, his working memory was 71, borderline, and his full-scale IQ was 72, borderline. Id. On the Vineland Adaptive Behavior Scale II, his socialization score was in the mild range of mental retardation. Id. Dr. Engeln opined that Mr. Cardenas "presents with verbal, cognitive, and social skills suggesting high need for significant special ed support," [and] "[a]s he enters adulthood, social-emotional issues will be the most limiting in job adjustment potential." (AR 1056). Based on Dr. Engeln's evaluation, and other evidence at the time, C. Kampschaefer, Psy.D. determined that Mr. Cardenas had an extreme limitation in interacting and relating with others.5 (AR 1061, 1064).  MSJ at 10.

Defendant responds as follows:

> First, Plaintiff mentions a statement made by Richard Engeln, Ph.D., in his consultative examination report from March 2016—two years prior to the disability cessation date (Pl.'s Br. at 10 (citing AR 1056)). Plaintiff points out that Dr. Engeln stated that Plaintiff "presents with verbal, cognitive, and social skills suggesting high need for significant special ed support" and "[a]s he enters adulthood, social-emotional issues will be the most limiting in job adjustment potential" (Pl.'s Br. at 10 (quoting AR 1056)). These statements do not qualify as medical opinions because they provide no information about what Plaintiff "can still do despite [his] impairment(s)" and they do not indicate any specific limitations or restrictions in any abilities. See 20 C.F.R. § 416.913(a)(2). Moreover, Dr. Engeln's statement

about possible social-emotional issues in adulthood is merely a vague speculation about the future—Dr. Engeln had no way of knowing Plaintiff's condition when he reached adulthood, two years after the examination

Dr. Engeln's March 2016 statements are also not relevant to the issue of whether Plaintiff ceased to be disabled on April 1, 2018. The agency reevaluated Plaintiff's condition on April 22, 2016, and found that he still was still disabled at that time (AR 1059-64). However, upon redetermination after Plaintiff's 18th birthday, the agency determined that Plaintiff ceased to be disabled on April 1, 2018 (AR 129-33). Dr. Engeln's statements provide no information about whether Plaintiff's condition improved between April 22, 2016, and April 1, 2018. As such, even if Dr. Engeln's statements did qualify as medical opinions under the regulations—which the Commissioner does not concede—any error in evaluating them would be, at most, harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (cleaned up).  Resp. at 11.

Defendant's response is not altogether persuasive. Defendant is admittedly correct that many of Dr. Engeln's statements quoted above do not constitute a "medical opinion" as defined by the regulations, namely what a claimant "can still do despite [his] impairment(s)." See 20 C.F.R. § 416.913(a)(2). Nevertheless, that does not justify disregarding the <u>findings</u> underlying Dr. Engeln's statements such as the WISC-IV working memory score of 71(borderline), and Plaintiff's full-scale IQ of 72 (borderline). <u>Id.</u>  The full-scale IQ of 72 was lower than the results of the test Dr. Murphy administered (80).  AR 1142–43.  Further. Dr. Engeln noted an additional test Dr. Murphy did not administer, which seems somewhat relevant, namely the Vineland Adaptive Behavior Scale II, reflected Plaintiff's socialization score was in the mild range of mental retardation. AR 1054.

Further, Defendant's point about the two-year gap in time between Dr. Engeln's statements and the disability redetermination date is not persuasive.  This is not so significant a gap in time as to render Dr. Engeln's statements and testing of no value.  Notably, there was also a two-year gap in time between the agency's April 2018 disability redetermination and the first ALJ hearing in

April 2020 (AR 71-76[5]), yet the ALJ nevertheless found that April 2018 determination persuasive.[6]

Additionally, contemporaneously with Dr. Engeln's opinion, Plaintiff emphasizes the opinion of C. Kampschaefer, Psy.D., who determined that Plaintiff had an extreme limitation in interacting and relating with others. (AR 1061, 1064). Neither Defendant nor the ALJ addressed that opinion.

### c.  Dr. Zhang

Plaintiff argues as follows:

> Dr. Zhang opined that Mr. Cardenas would require school accommodations because of his diagnoses of autism spectrum disorder and ADHD. (AR 902). In addition, Dr. Zhang noted that Mr. Cardenas "may have impairment in communicating with peers" and "transitions to any changes should be smooth and gradual." (AR 904). As a result, Mr. Cardenas was deemed eligible for accommodations such as priority registration, a note taker, test proctor outside of classroom, testing in a room with reduced distraction, extended testing time, e-text, audio recorder, and personal, academic, and vocational counseling. (AR 906). MSJ at 11.

As Defendant notes in response, this is not a medical opinion under the regulations because it is not a statement of what the claimant "can still do despite [his] impairment(s)" and it does not indicate any specific limitations or restrictions in any abilities. See 20 C.F.R. § 416.913(a)(2).

### C.  Lay Witness Opinion of Daniel Martin

Plaintiff contends the ALJ erred in rejecting the opinion of his former legal representative. Plaintiff explains as follows:

> Daniel Martin ("Mr. Martin") was a former representative for Mr. Cardenas who has extensive experience in recruiting and hiring staff for legal offices, has a Master's Degree in Organizational Behavior and Industrial Psychology, and has worked around disabled people several times. (AR 841). Mr. Martin observed that Mr. Cardenas "likely had autism and was developmentally delayed." Id. He further observed that Mr. Cardenas "relatively high communication skills do not provide

---

[5] The operative hearing was actually in May 2023 (AR 41-56), though Defendant notes that Plaintiff had the hearing continued four times, and Defendant thus implies the agency was not responsible for that delay. In any case, the initial hearing (or attempt at a hearing) in April 2020 suffices to illustrate this point.

[6] Which the ALJ referenced as the "prior administrative finding" (PAMF) of Dr. Mark Berkowitz. AR 27.

14

him additional functioning because he suffers from severe anxiety." Id. Mr. Martin has "personally observed" him "turn around and walk away because somebody said something that caused discomfort" while in a group of people. Id. He also stated that he observed jokes, specific subjects or even a demeanor trigger such a response. Id. As a result, Mr. Martin opined that Mr. Cardenas likely cannot "perform the tasks required of the most rudimentary jobs," and he requires assistance from family and neighbors with finances, transportation, and reaching goals to function. (AR 842).

. . .

In this case, Mr. Martin is not the average lay witness given his significant experience in recruiting and hiring staff for legal offices and his related education. In addition, Mr. Martin proffered vocational limitations based on his experience and his personal observations of the Plaintiff's symptoms. Furthermore, Mr. Martin's testimony that Mr. Cardenas "relatively high communication skills" are disrupted by his severe anxiety is consistent with the evidence in this record

It's not clear why Plaintiff believes the statements from his former representative are impactful. First, the fact that he recruits and hires staff for legal offices has no apparent relevance. Additionally, that he has worked around disabled people "several times," does not necessarily elevate him to the status of an expert on the subject matter here at issue, although it may justify Plaintiff's characterization that Mr. Martin is "not the average lay witness."

Second, the statement that Plaintiff likely has autism is not impactful as that diagnosis is not disputed. Third, as to the fact that he observed Plaintiff walk away from a group of people who said something discomforting and made jokes is a not a particularly helpful observation that speaks to Plaintiff's functionality. Thus, the ALJ did not err in dismissing this lay witness's statements.

### VI.  Conclusion

The ALJ's assessed RFC is not supported by substantial evidence insofar as it was: **1-** predicated on faulty reasoning for rejecting Plaintiff's subjective symptoms, **2-** was partially based on Dr. Murphy's opinion which is at odds with the cognitive testing he rendered, and **3-** the ALJ erred in failing to consider the testing results rendered by Dr. Englen, and the contemporaneous opinion of C. Kampschaefer, Psy.D., who determined that Mr. Cardenas had an extreme limitation in interacting and relating with others.

### VII. Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to conduct further proceedings consistent with these Findings and Recommendations. See Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (noting that, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.).

### VIII. Recommendations

For the reasons stated above, the recommendation is that:

1. Plaintiff's motion for summary judgment (Doc. 12) be **GRANTED.**

2. Defendant's cross-motion (Doc. 16) be **DENIED.**

3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

### IX. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations." The failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 29, 2025**          **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE